JAMES DEMERITT *v.* JOHN A. PARKER.

October Term, 1904.

Present: TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 29, 1909.

*Adverse Possession—Acts Constituting—Claim of Right—Master's Report—Construction.*

No acts done on land by a person not acting as owner under a claim of right can constitute adverse possession thereof.

In a suit to enjoin trespasses on land, master's report considered, and *held* that a finding that orator had no deed covering the land in dispute and had not acquired title by adverse possession, though in terms applicable to all of the disputed land, must be construed not to apply to a certain strip of the disputed land of which other findings showed that orator had adverse possession.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto, at the March Term, 1904, Washington County, *Rowell*, Chancellor. Decree overruling the exceptions and dismissing the bill with costs. The orator appeals. The opinion states the case.

The following is the sketch referred to in the opinion (the figures indicate rods):

The land in question consists of the two "Barnes Pitches" indicated on the above sketch, and the strip eight rods wide, bounded on the north by the "Smalley Pitch" and on the south by the "First Barnes Pitch." The defendant claimed title to this land under a quitclaim deed thereof dated February 21, 1900, from Martha A. Towne, who is the daughter of Joseph Barnes, and who then occupied the whole "Joseph Barnes farm."

*E. F. Palmer* and *J. H. Senter* for the orator.

In order to constitute adverse possession of a whole lot under color of title, there must be actual possession of at least part of the land covered by the deed. *Hodge* v. *Eddy*, 38 Vt. 345; *Oatman* v. *Fowler*, 43 Vt. 465; *Kidder* v. *Kennedy*, 43 Vt. 725; *Brown* v. *Edson*, 22 Vt. 357; *Doolittle* v. *Linsley*, 2 Aik. 155; *Brown* v. *Clark*, 73 Vt. 234; *Morse* v. *Churchill*, 41 Vt. 652; *Webb* v. *Richardson*, 42 Vt. 473.

When one buys land, pays for it and is entitled to a deed, and enters into possession of it, such possession is adverse. *Ripley* v. *Yale*, 19 Vt. 161.

*Geo. W. Wing* for the defendant.

HASELTON, J. This was a bill in chancery brought by the orator to enjoin the defendant from committing trespasses upon a tract of woodland of about 32 acres in area situated in Waterbury. The orator claimed to own and have possession of the land in question as a part of the orator's home farm of which the orator was, and since 1850 had been, the owner and possessor. The case was heard on pleadings, and report of a special master with supplemental reports, and the orator's exceptions thereto. On hearing, the exceptions were overruled, and the bill was dismissed with costs. The orator appealed.

The orator bought his home farm, above referred to, of William Lampher in 1850 when it was conveyed to him. The master finds that at the time of the conveyance the land in dispute was "measured and appraised by two persons selected by the orator and Lampher," and that the orator paid Lampher therefor, and that "the orator supposed that Lampher's deed conveyed to him" the land in dispute. However, Lampher's deed did not cover the land in dispute and the orator showed no

title by deed to the land in question. The finding that the orator bought and paid for the land in dispute stands as a part of the report although in closing his second supplementary report the master says: "The more the evidence is considered the more I am inclined to think that if I have made a mistake in any of my findings, it is in the finding that the orator ever bought, measured and paid for the disputed land."

The orator had at several times done acts upon the disputed land; he had cut trees for rails, for firewood, for building material and for pump logs; and he or his grantor had done other acts on the disputed land which in view of the findings need not be enumerated, for the master finds, in his supplemental reports, that the orator did not do these acts on the disputed land as owner or under a claim of right. The orator, then, had no title by adverse possession to any land to which the findings last referred to are applicable. The findings are in terms applicable to all the land in dispute, but a certain four rod strip of land must we think be treated as excepted by the master from the operation of these findings, in view of other findings in the report hereinafter referred to.

A part of the land in dispute abuts upon the west line of the Demeritt farm, and the master finds that this original west line is indicated by marked trees. But he finds that on the south side of the Demeritt farm and between that and the farm of one Barnes, a predecessor in title of the defendant, there was a fence which ran west about four rods beyond the line indicated by the marked trees to a point designated as "R" on a sketch referred to by the master, which sketch the reporter is requested to make a part of the statement of the case; and the master finds that for fifty years at least the owners of the Barnes farm have had an open, undisputed and exclusive use and possession of the land west of a line drawn through the point "R" and substantially at a right angle to the division fence and parallel with the marked tree line, and that during the same time Demeritt had a like open, undisputed and exclusive use and possession of the land east of the line so drawn through the point designated as "R".

In 1852 Demeritt and Barnes executed a fence agreement as to the division of the fence referred to and proceeded to divide the fence in accordance therewith. By this agreement and by what was done under it the point "R" was recognized

as the southwest corner of Demeritt's land. The point "R" was generally spoken of by the witnesses as the southwest corner of the orator's farm. The line above referred to running through "R" at right angles to the fence is called by the master the "occupation line." Indeed in one part of the report the master designates the point "R" as the southwest corner of the orator's land, and the report shows facts which afford ample basis for the master's designation of "R" as such southwest corner.

In 1827 or shortly thereafter Barnes built a fence running southwesterly from the point "R" to a ledge. This was not a divisional fence, and its course during its existence was not always the same, but it was maintained from the time it was built down to about 1870 with "R" as its starting point, and the observance of this starting point was a recognition of the significance of the point "R". So far west as that point, Demeritt and his grantor on the one hand, and Barnes on the other, appear from the report to have understood that their lands ran together. The "occupation line" running north from the point "R" was never marked by any fence, but no dispute as to the land arose until shortly after the defendant, in 1900, took a quitclaim deed of the lands in dispute. At one time two ash trees stood near the "occupation line" one a little west of the other. About eleven years before the filing of the master's report Demeritt sold the easterly tree and about the same time Mrs. Towne, a grantor of the defendant, sold the westerly tree. The master finds that, in 1852, Demeritt did not claim to own west of the "occupation line" and that Barnes had the right to understand that he did not. From the circumstances of the sale of the ash tree by Demeritt the master finds that "the orator did not on this occasion claim to own west of said 'occupation line,' and that he understood that Mrs. Towne, the successor of Joseph Barnes, claimed to own west of this line." Most of the reasons given by the master for the general finding that the orator did not do as owner the acts which he did upon the disputed land indicate that such finding applies only to the land west of the "occupation line." The master is satisfied that among other things, "the orator would never have agreed to divide the whole fence between him and Barnes, and only divide to the point marked 'R' on the plan; * * * that he would never have signed and executed the divisional agree-

ment, in which he declares that his southwest corner was at
'R'; * * * that his own brother and sister-in-law would
not have understood, as they testified, that the orator's land ran
no further west than the divisional fence on the line marked
'R O' on the plan of the original report; that one of his prin-
cipal witnesses, Mr. Smith, would not have understood the same
thing * * * if the orator had been claiming to own the land
and to be doing the acts as owner.'' What acts are referred to
above? Very clearly acts on the land further west than the
''occupation line'' running north through the point marked
''R''. With regard to the acts of the orator done upon the dis-
puted land, speaking generally, the master states that it is rather
difficult to determine whether the orator did the acts by per-
mission or as a trespasser or by way of a mixed occupation with
Barnes and his successor, and the master does not undertake to
determine how this was. Clearly the above statement of the
master was not meant to apply to the strip of land of which, as
the master finds, the orator had had for half a century the
exclusive possession and use. In view of the findings that the
orator bought and paid for the disputed land, of other findings
already referred to, and of all the findings of the master, it
is considered that the report contains, in effect, a finding that the
orator occupied as owner and under a claim of right that por-
tion of the land paid for by him of which for fifty years he had
the ''open undisputed and exclusive use and possession''. The
southwest corner of the orator's land is, then, the west end of
the division fence referred to, the point designated by the mas-
ter as ''R'', and his west line is not the marked tree line but a
line parallel to it and about four rods west thereof running
northerly from the west end of the division fence referred to.

As to the rest, the greater part of the disputed land, the
report shows neither title nor color of title nor possession nor
right of possession in the orator. It is, therefore, unnecessary
in this proceeding to consider the title of the defendant thereto.
The orator excepted to some findings of the master and to his
failure to find in one respect, but with the report construed as
it is in this opinion these exceptions are considered to be either
groundless or immaterial.

*Decree reversed and cause remanded. Let a decree be ren-
dered consonant with the views herein expressed.*